UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-31

WILLIAM EUGENE THOMPSON                                                                PETITIONER

V.

PHILIP W. PARKER, WARDEN                                                              RESPONDENT

**MEMORANDUM OPINION & ORDER**

Petitioner, a prisoner sentenced to death by the Commonwealth of Kentucky, has a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 currently pending before this Court. Petitioner has filed a motion for an evidentiary hearing (DN 23). The Respondent has objected to Petitioner's motion for an evidentiary hearing (DN 24). This matter is now ripe for adjudication. For the following reasons, Petitioner's motion for an evidentiary hearing is GRANTED IN PART.

## I.  INTRODUCTION

Petitioner, William Eugene Thompson, asserts that an evidentiary hearing is necessary on his first and second claims for relief in his § 2254 petition. Specifically, Thompson seeks a hearing on his claim that extrinsic influence upon the jury's sentencing deliberation violated his constitutional rights to an impartial jury and to confront the witnesses against him under the Sixth and Fourteenth Amendments. Thompson also seeks an evidentiary hearing on his claim that his counsel was ineffective for explaining to the jury in closing arguments that Thompson would be eligible for release on parole in 25 years, despite the fact that the parole board had ordered Thompson to serve out a life sentence while he was awaiting trial in the present case.

## II.  FACTS

In May of 1986, while serving a life sentence for murder,[1] Thompson killed Charles Fred Cash, a Department of Corrections (DOC) Officer.  At Thompson's first trial, he was convicted and received a death sentence, which was reversed by the Kentucky Supreme Court.  *Thompson v. Commonwealth*, 862 S.W.2d 871, 872 (Ky. 1993).  On remand, Thompson pled guilty to murder, robbery in the first degree, and escape in the first degree.  A sentencing trial for the murder conviction was held in Graves County to determine a new sentence.

At the sentencing trial, Thompson testified on his own behalf.  In response to a question asked by his attorney, Thompson responded that "I will die in prison.  I have been in now for almost twenty-seven years.  I have no chance of ever getting out.  I finally went up for parole on the life sentence that I was originally doing in November of 1993 and at that time, the Parole Board give me a serve-out on a life sentence which means that I will die in prison."  There was no follow-up question to this response, and the DOC documents evidencing the serve-out order were not introduced into evidence.  During closing arguments, Thompson's counsel stated as follows:

> We have a case now where it is not necessary to take a life. He is going to die in prison in maximum security and as I said the first day, the question is: is the State going to do it or is God going to take him ? Because he doesn't even think about the P word-the Parole Board-until he is about seventy-five years of age. That is twenty-five New Years. Twenty-five Thanksgivings. Twenty-five Christmases. I'd like to think and I will be retired by then, we may have a colony on Mars by then. Twenty-five years.

The jury returned a sentence of death, finding two of the statutory aggravating circumstances presented to them.

Thompson then appealed his sentence, raising a number of issues including his competency to enter a guilty plea.  Because the trial court did not hold an evidentiary hearing on

---

[1] Petitioner was convicted in 1974 in Pike County for murder for hire.

the issue of competency, the Kentucky Supreme Court remanded for a retrospective competency hearing and "abate[d] consideration of the remaining issues on appeal." *Thompson v. Commonwealth*, 56 S.W.3d 406, 407 (Ky. 2001). After a hearing, the trial court determined that Thompson had been competent to plead guilty. The Kentucky Supreme Court affirmed the trial court's competency finding along with Thompson's judgment and sentence. *Thompson v. Commonwealth*, 147 S.W.3d 22 (Ky. 2004).

After Thompson's conviction was affirmed on direct appeal, Thompson filed a post-conviction RCr 11.42 Motion in the Lyon Circuit Court. In that motion, Thompson argued that his attorney was ineffective and that the jury considered extra-judicial evidence. With respect to his ineffective assistance of counsel claim, Thompson argued that when his trial counsel referred to the possibility that he could be paroled in 25 years, he left the jury with the false impression that he could someday be released on parole and thus made it more likely that the jury would give him the death penalty. Thompson filed an affidavit of one the jurors in the record in 2005. In that affidavit, the jury foreperson, Roger Dowdy, stated:

> I was the jury foreman in the case of Commonwealth v. William Eugene Thompson.
>
> In determining Mr. Thompson's sentence, the jury was afraid that Mr. Thompson might be released from prison if he was to receive anything less than a death sentence.
>
> During the time of the trial, there was another case in the news that the jury discussed during deliberations. A seventy year old man who committed a murder in California had been released from prison on parole. This man, despite his age, then committed another murder in Florida. The jury was afraid that Mr. Thompson, even as an old man, would be a danger to society if released.
>
> An article about that other case is attached to this affidavit. Similar news pieces ran in the media available in Graves County.

The Lyon Circuit Court denied Thompson's claims without an evidentiary hearing, and the Kentucky Supreme Court affirmed on appeal.[2]  *Thompson v. Commonwealth*, 2010 WL 4156756 (Ky. October 21, 2010).  Petitioner then filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 in this Court.  Petitioner now moves for an evidentiary hearing.

### III. ANALYSIS

Thompson is seeking an evidentiary hearing on claims one and two of his petition.  The first claim is based upon the consideration of extra-judicial evidence and the second claim is based upon ineffective assistance of counsel.

**1. Claim One – Extra-Judicial Evidence in Jury Room**

Thompson asserts that extrinsic influence upon the jury's sentencing deliberation violated his constitutional rights to an impartial jury and to confront the witnesses against him under the Sixth and Fourteenth Amendments.  Specifically, Thompson alleges that the jury was exposed to media accounts of another capital trial (the "Singleton trial") being held around the same time as his trial.  The defendant in that trial was a 70-year old man who committed a murder in Florida after being released from prison on parole.  The foreman of the jury in Thompson's trial stated in an affidavit that the jury discussed the Singleton case and was afraid that Thompson might be released from prison if he were to receive anything less than the death penalty.  Now, Thompson seeks an evidentiary hearing in order to prove that the jurors were exposed to media coverage about the Singleton trial: "if the jury was exposed to this extraneous information, a reasonable

---

[2] The Kentucky Supreme Court found that Petitioner's claim that the jurors considered improper outside information in deliberating Thompson's sentence was not a proper ground for a RCr 11.42 motion, as issues that could have been raised on direct appeal cannot be raised in a motion pursuant to RCr 11.42.  2010 WL 4156756 at *5.

4

juror would have likely considered the extraneous information in deciding Thompson's sentence."

The Kentucky Supreme Court refused to consider Thompson's claim that the jurors considered improper outside information in deliberating Thompson's sentence, finding that such a claim was not a proper ground for a RCr 11.42 motion, as issues that could have been raised on direct appeal cannot be raised in a motion pursuant to RCr 11.42.  2010 WL 4156756 at *5.  Thompson contends, and Respondent acknowledges, that this claim was not procedurally defaulted because the Kentucky Supreme Court does not regularly follow the procedural rule it applied to deny Thompson's claim without reaching the merits.  Thompson's claim is not a claim that he could have and should have raised on direct appeal, and Kentucky courts do allow such claims to be brought in a RCr 11.42 motion.  S*ee Bowling v. Commonwealth*, 168 S.W.3d 2, 9-10 (Ky. 2004).  Therefore, Thompson's claim is not procedurally defaulted.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Because Thompson's claim was not adjudicated on the merits in State court, the deference due under § 2254(d) does not apply.  *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

Pursuant to 28 U.S.C. § 2254(e)(2), "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that :

(A)    The claim relies on –

    (i) A new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii) A factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B)   The facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

This section does not apply unless the initial conditional clause is met: "[i]f the applicant has failed to develop the factual basis of a claim." The phrase "failed to develop" implies "some lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). The Supreme Court has defined a prisoner's diligence as "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . on whether those efforts could have been successful." *Id*. at 435. This will typically require "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id*. at 437.

If the petitioner did not fail to develop the facts in state court, then the district court may hold an evidentiary hearing. *Id*. at 433. However, "'bald assertions and conclusory allegations do not provide sufficient grounds to warrant requiring . . . an evidentiary hearing.'" *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (quoting *Stanford v. Parker*, 266 F.3d 422, 460 (6th Cir. 2001)), *cert denied*, 127 S. Ct. 1877 (2007). The decision of whether or not to hold an evidentiary hearing is within the discretion of the district court. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). However, the Supreme Court has instructed the reviewing court to "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id*. at 468. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*.

Although Thompson has submitted an affidavit of a juror regarding his claim, the Court must first establish what evidence it may properly consider in determining whether Thompson may be entitled to habeas relief.  RCr 10.04 reads that "[a] juror cannot be examined to establish a ground for a new a trial, except to establish that the verdict was made by lot."  However, despite this strict wording, the Kentucky Supreme Court has explained that the rule must give way to various constitutional requirements, such as due process.  *Taylor v. Commonwealth*, 175 S.W.3d 68, 74 (Ky, 2005).  The Kentucky Supreme Court, in *Bowling*, held that "an interpretation of RCr 10.04 that would exclude evidence of outside influence obviously would implicate a defendant's Sixth Amendment right to confrontation."  168 S.W.3d at 9-10.  Likewise, in *Commonwealth v. Woods*, the Kentucky Court of Appeals held that despite the plain wording of RCr 10.04, a trial court could consider the merits of a claim that juror consulted a dictionary during their deliberations for the definition of the word 'rape.'  230 S.W.3d 331. The courts in *Bowling* and *Wood* both rely upon *Doan v. Brigano*, 237 F.3d 722 (6th Cir. 2001) and its interpretation of Federal Rule of Evidence 606.

The *Wood* court noted the Sixth Circuit's delineation in *Doan* "between those jury matters that can, and those that cannot, be used to set aside a jury verdict."  *Wood*, 230 S.W.3d at 333.  In *Doan*, the Sixth Circuit construed that Supreme Court's decision in *Mattox v. United States*, 146 U.S. 140 (1892) to distinguish when courts should consider juror testimony:

> [In *Mattox,* the Supreme Court] held that a matter "resting in the personal consciousness of one juror" may not be used to upset a jury's verdict "because, being personal, it is not accessible to other testimony." [ *Mattox,* 146 U.S.] at 148, 13 S.Ct. 50, 36 L.Ed. 917. The Court stated that it would not give the "secret thought[s] of one [juror] the power to disturb the expressed conclusions of twelve." *Id.* In sharp contrast to the secret thoughts of jurors, the Court held that juror testimony as to "overt acts" of misconduct can be considered because the remaining members of the jury can testify as to whether or not those acts of misconduct actually occurred. *Id.* at 148–49, 13 S.Ct. 50. The Court recognized that, by drawing this distinction, verifiable evidence of a jury's consideration of

7

> extraneous prejudicial information could be considered by courts while still respecting the finality of jury verdicts by disallowing testimony as to the unverifiable thoughts of jurors. *See id.* at 148–49, 13 S.Ct. 50.
>
> Thus, the Supreme Court in *Mattox* held that, when addressing a motion for a new trial, courts should consider juror testimony concerning any overt acts of misconduct by which extraneous and potentially prejudicial information is presented to the jury, including juror testimony showing that a newspaper article relevant to the case was read aloud in the jury room.

237 F.3d at 732-33 (internal footnote omitted). Accordingly, this Court can consider juror testimony regarding "overt acts" of misconduct, but cannot consider evidence of the subjective effect of the extra-judicial matter on a juror. *See United States v. Jones*, 468 F.3d 704 (10th Cir. 2006) ("[Q]uestioning of a juror who has been exposed to extraneous information is limited to the circumstances and nature of the improper contact, and questions bearing on the subjective effect of the contact on the juror's decision making are prohibited." (internal quotations omitted)).

The Court must now decide whether, if the jury was improperly exposed to extrajudicial information, that exposure may entitle Thompsonr to habeas relief. "[E]xtrinsic influence on a jury's deliberations violates a defendant's Sixth and Fourteenth Amendment rights to an impartial jury, to confront witnesses against him, and to be present at all critical stages of his trial." *Bauberger v. Haynes*, 666 F.Supp.2d 558, 562-63 (M.D.N.C. 2009). Respondent contends that the jury misconduct alleged in this case does not fall within the sphere of jury matters that can be used to set aside a jury verdict; therefore, Respondent argues, the truth of the allegations are not relevant to the resolution of this issue. In Respondent's Rule 5 Answer, Respondent argues that the juror exposure to the Singleton trial falls within the scope of general knowledge and experience that every juror brings into the room.

8

In *Waldorf v. Shuta*, 3 F.3d 705 (3d Cir. 1993), the Court of Appeals for the Third Circuit ordered a new trial based upon the jury's exposure to extrajudicial collateral information. In that case, the plaintiff was rendered a quadriplegic as a result of a motor vehicle accident involving the defendants. *Id*. at 706. During the trial on damages, a defendant moved for a mistrial due to the jury's exposure to a news report concerning a $30 million verdict for a high school student from Queens, New York who was rendered a quadriplegic as a result of a school shooting. *Id*. at 707. The district court then questioned the jury as a group in order to determine which members of the jury were exposed to the news coverage of the Queens verdict. *Id*. When asked if the Queens case was discussed among the jurors, a juror replied "Not really." *Id*. The judge then examined each juror individually in her chambers and learned that a newspaper article on the Queens case was brought into the jury room and discussed. *Id*. at 707-08. Relying on the jurors' assurances of continued impartiality, the district court denied the defendant's motion for a mistrial. *Id*. at 710. The Third Circuit found that the district court relied too heavily on the jurors' assurances of impartiality and did not conduct a sufficiently thorough voir dire. *Id*. The Court then noted that, "[n]or do we find that the risk of actual prejudice in this case is reduced due to the fact that the offending news coverage, involved here, dealt with a factually similar but nevertheless completely separate, unrelated case." *Id*. at 713.

The Court finds that an evidentiary hearing is necessary to determine the circumstances and nature of the jurors' exposure to the media coverage of the Singleton trial. An evidentiary hearing could enable Thompson to prove the jury was improperly exposed to prejudicial extraneous information, which, if true, may entitle the Thompson to federal habeas relief. *See Waldorf,* 3 F.3d 705. The Court acknowledges that the "mere fact of infiltration of some molecules of extra-record matter" would not entitle Thompson to habeas relief. *United States ex*

*rel. Owen v. McMann*, 435 F.2d 813, 818 (2d Cir. 1970). However, it is the nature of the facts communicated which determine the likelihood of prejudice. *Id*. Although an individual juror's personal knowledge of the facts of the Singleton trial may fall within the scope of general knowledge that a juror brings inside the juror room, an evidentiary hearing will help to determine the nature and extent of the extrajudicial information and its likely effect on the hypothetical average jury. *See id*. at 820.

**2. Claim Two – Ineffective Assistance of Counsel**

As to Thompson's second claim of ineffective assistance of counsel, the Kentucky Supreme Court decided the claim on the merits in *Thompson v. Commonwealth*, 2010 WL 4156756 (Ky. October 21, 2010). Although Thompson was denied an evidentiary hearing in the state court, because Thompson is challenging the Kentucky Supreme Court's resolution of this claim under § 2254(d)(1),[3] this Court's review is limited to the state court record. *See Cullen v. Pinholster*, 131 S.Ct. 1388 (2011).

In *Pinholster*, the Supreme Court held that a federal court's review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id*. at 1398. This is because "review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of 'the time the state court renders its decision.'" *Id*. at 1399 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71–72, (2003)). "To

---

[3] Under § 2254(d), an application for a writ of habeas corpus on behalf of a state prisoner "shall not be granted with respect to [such a] claim ... unless the adjudication of the claim:"

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. (citing *Williams v. Taylor,* 529 U.S. 362, 405, 406 (2000)).  If the federal court determines that the state court identified the correct governing legal principle in existence as the time, the federal court then must assess whether the state court unreasonably applied that legal principle to the facts of the petitioner's case.  *Id*.  "It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."  *Id*.  Thus, the Supreme Court held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  *Id*. at 1400.

The Supreme Court went on to explain that its holding in *Pinholster* did not render § 2254(e)(2) superfluous.  *Id*.  The Supreme Court explained that § 2254(e)(2) continues to have force when § 2254(d)(1) does not bar federal habeas relief.  *Id*. at 1401.  "At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court."  *Id*.

Here, Thompson is challenging the Kentucky Supreme Court's resolution of his ineffective assistance of counsel claims under § 2254(d)(1).  Like in *Pinholster*, Thompson's claim of ineffective counsel was decided on the merits without an evidentiary hearing in the state court.  Unlike in *Pinholster*, where the ineffective assistance of counsel claims were summarily dismissed as without merit, the Kentucky Supreme Court thoroughly analyzed Thompson's claim of ineffective assistance of counsel.  *Thompson*, 2010 WL 4156756 at *1-4.  Accordingly, under *Pinholster*, this Court's habeas review of Thompson's claim of ineffective assistance of

counsel is limited to the state court record. Thus, it would be futile to conduct an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERD that Petitioner's motion for an evidentiary hearing is GRANTED IN PART. IT IS FURTHER ORDERED that an evidentiary hearing is scheduled for June 14, 2012 at 1:00 p.m. (CDT).