**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**
**CIVIL ACTION NO. 5:11CV-31-R**

**[CAPITAL CASE]**

WILLIAM EUGENE THOMPSON                                        PETITIONER

v.

PHILLIP W. PARKER                                                   RESPONDENT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner William Eugene Thompson's motion to alter

and amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (DN 44).

Thompson seeks to alter and amend this Court's Memorandum Opinion and Order denying his

amended petition for writ of habeas corpus under 28 U.S.C. § 2254 and denying a certificate of

appealability (COA) on all but one of Thompson's claims (DNs 42 and 43).  Respondent filed a

response to the instant motion (DN 45).  For the following reasons, the Court will deny the

Rule 59(e) motion, except to the extent that the Court will expand the COA to include

Thompson's sixth claim of error challenging Kentucky's proportionality review in his case.

**I.  RELEVANT BACKGROUND**

The Court set forth the factual and procedural history in its December 10, 2012,

Memorandum Opinion and will not repeat it here in full but will provide a summary where

relevant to the Rule 59(e) motion.  While serving a life sentence for murder in the minimum-

security Western Kentucky Farm Center, Thompson killed Fred Cash, a corrections officer.

After Thompson's first conviction and death sentence were overturned on direct appeal, he

pleaded guilty and was convicted of the murder.  A penalty-phase trial was held on

February 2-11, 1998, to determine sentencing on the murder conviction.  At the conclusion,

Thompson was sentenced to death. The jury found the existence of the following two aggravating factors: Thompson's prior conviction of murder and that the victim was a corrections officer engaged in the performance of his duties at the time of his murder. *Thompson v. Commonwealth*, 147 S.W.3d 22, 45 (Ky. 2004).

Following an unsuccessful direct appeal, Thompson filed a motion to vacate and set aside his sentence under Kentucky Rule of Criminal Procedure (RCr) 11.42. The Lyon Circuit Court denied the motion on May 15, 2009, finding an evidentiary hearing was not warranted. Thompson appealed the denial to the Kentucky Supreme Court, which affirmed on October 21, 2010. *Thompson v. Commonwealth*, No. 2009-SC-557-MR, 2010 Ky. Unpub. LEXIS 99, at *11 (Ky. Oct. 21, 2010).

Thompson filed a petition for writ of habeas corpus in this Court, and he subsequently filed an amended petition. His amended petition raised seven claims for relief. The Court entered a Memorandum Opinion and Order on December 10, 2012, denying the petition on each of the grounds raised. The Court granted a COA with respect to Thompson's fifth claim of error concerning the jury instructions and denied a COA with respect to the remaining claims.

Thompson now moves to alter or amend the judgment raising three grounds. He contends that the Court committed clear error in rejecting his claim that his trial counsel was ineffective when counsel referenced during his closing argument that Thompson would be eligible for parole in twenty-five years when in fact he had been ordered to serve out his life sentence on his previous murder conviction by the Kentucky Parole Board. Thompson also moves the Court to expand the COA to include his sixth claim of error, that Kentucky's

proportionality review in his case was unconstitutionally limited in scope, and to expand the

COA to include his seventh claim of error based on cumulative error.

## II. STANDARD OF REVIEW

Rule 59(e)[1] of the Federal Rules of Civil Procedure allows a district court to alter, amend,

or vacate a prior judgment. *See* Fed. R. Civ. P. 59(e); *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119,

122 (6th Cir. 1982). The purpose of Rule 59(e) is "to allow the district court to correct its own

errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings."

*Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *York v. Tate*, 858 F.2d 322,

326 (6th Cir. 1988)). A district court may amend a judgment where there is: "(1) a clear error of

law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need

to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005);

*see also Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006); *Gencorp,*

*Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

The Sixth Circuit has explained that "Rule 59(e) motions cannot be used to present new

arguments that could have been raised prior to judgment." *Howard*, 533 F.3d at 475. *See also*

*Roger Miller Music, Inc. v. Sony/ATV Publ'g*, *LLC*, 477 F.3d 383, 395 (6th Cir. 2007); *Sault Ste.*

*Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1988). "Rule 59(e)

allows for reconsideration; it does not permit parties to effectively 're-argue a case.'" *Howard*,

533 F.3d at 475 (quoting *Sault Ste. Marie Tribe*, 146 F.3d at 374). The grant or denial of a Rule

59(e) motion is within the discretion of the district court. *Huff*, 675 F.2d at 122.

---

[1]Rule 59(e) states, "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of a judgment."

### III. **ANALYSIS**

**A.     Claim Two - Ineffective Assistance of Counsel**

Thompson contends that his trial counsel was ineffective when, in closing argument of

the penalty-phase trial, he referred to the possibility that Thompson would be eligible for parole

in twenty-five years when in fact the Kentucky Parole Board had already decided that Thompson

would serve out his previous life sentence.  In denying the habeas petition, the Court rejected

this claim, finding that Thompson had not overcome the strong presumption that his trial counsel

had rendered adequate assistance nor had he established that the Kentucky Supreme Court was

objectively unreasonable in its application of the standard for establishing ineffective assistance

as stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Thompson now contends that

this Court's ruling on his ineffective-assistance claim was clear error.  He requests the Court to

alter, amend and set aside its Judgment and grant his habeas petition on this issue; or,

alternatively, to order that his trial counsel be deposed or grant an evidentiary hearing on the

issue; or to grant a COA.

> During closing arguments, Thompson's trial counsel stated as follows:
>
> We have a case now where it is not necessary to take a life.  He is going to die in
> prison in maximum security and as I said the first day, the question is:  is the State
> going to do it or is God going to take him?  Because he doesn't even think about the
> P word - the Parole Board - until he is about seventy-five years of age. That is
> twenty-five New Years. Twenty-five Thanksgivings. Twenty-five Christmases. I'd
> like to think [that] I will be retired by then, we may have a colony on Mars by then.
> Twenty-five years.

Trial Tr. at 1281.

Thompson first raised this ineffective-assistance-of-counsel claim in his RCr 11.42

motion before the trial court.  The Lyon Circuit Court denied the ineffective-assistance claim

without an evidentiary hearing. The Kentucky Supreme Court affirmed on appeal. *Thompson v. Commonwealth*, 2010 Ky. Unpub. LEXIS 99, at *11. With regard to this claim, the Kentucky Supreme Court stated as follows:

> In an RCr 11.42 proceeding, the movant bears the burden of establishing that he was deprived of effective assistance of counsel. *Commonwealth v. Bussell*, 226 S.W.3d 96, 103 (Ky. 2007). To prevail on a claim of ineffective assistance of counsel, the movant must first show that counsel's performance was deficient, meaning that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the movant must demonstrate that counsel's deficiency prejudiced the defendant. *Id*. This requires a showing that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *Id*. at 694. We have also stated this standard as a determination of whether, absent counsel's errors, the jury would have had reasonable doubt with respect to guilt. *Brown v. Commonwealth*, 253 S.W.3d 490, 499 (Ky. 2008).
>
> "In order to be ineffective, performance of counsel must be below the objective standard of reasonableness and so prejudicial as to deprive a defendant of a fair trial and a reasonable result." *Haight v. Commonwealth*, 41 S.W.3d 436, 441 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. In considering an RCr 11.42 motion based on ineffective assistance of counsel claims, the trial court must evaluate counsel's performance in light of the totality of the circumstances and the trial as a whole. *Strickland*, 466 U.S. at 695. In an appeal from a decision on an RCr 11.42 claim, the reviewing court must defer to the determination of facts and credibility made by the trial court. *McQueen v. Commonwealth*, 721 S.W.2d 694, 698 (Ky. 1986).
>
> The comment in question . . . was made in the context of arguing against the imposition of the death penalty. It was clearly made more to emphasize the probability of Thompson never getting out of prison than the possibility that he could someday be released from prison. Nevertheless, in reviewing the record, we can see there were strategic reasons justifying defense counsel's reference to the possibility of Thompson being paroled after twenty-five years. *See Hodge v. Commonwealth*, 116 S.W.3d 463, 473 (Ky. 2003), *overruled on other grounds by Leonard*, 279 S.W.3d 151 (Tactical decisions "will not be second guessed in an RCr 11.42 proceeding.").

Had defense counsel brought up the serve-out on Thompson's prior life sentence, that would have likely drawn more attention to Thompson's prior conviction for the 1972 murder for hire, and perhaps prompted the Commonwealth to place more emphasis on the prior murder conviction in arguing its case. Further, the only defense offered by Thompson was that the murder of Cash was a spontaneous act, and not a calculated, premeditated act. In support of this defense, defense counsel argued that Thompson was getting close to possibly being paroled on his prior conviction and therefore had nothing to gain from planning and carrying out the murder of Cash. Presenting evidence of the serve-out on Thompson's prior conviction, although it was not ordered until 1993, would have contradicted this defense or confused the issue for the jury.

Also, at the time Thompson received the serve-out on his prior murder conviction, the Parole Board could have subsequently revisited the serve-out decision. 501 KAR 1:030, § 4(1)(d) (1993). Hence, there was still a possibility that Thompson could be paroled on the prior conviction.

Defense counsel argued strongly and passionately to the jury to consider the mitigating factors and not to impose the death penalty in his closing argument in this case. During his closing argument he stated,

> The Commonwealth knows it is not necessary to kill because Eugene Thompson will die in prison. . . . He is going to die in prison in maximum security and as I said the first day, the question is: is the State going to do it or is God going to take him?

In his opening statement, he stated unequivocally, "Eugene Thompson will die in prison and over the next several days, you will decide and the weight is on you to decide whether God will take him or the State will take him." As noted earlier, the responses elicited by defense counsel in his questioning of Thompson clarified that he had received a serve-out on his prior life sentence in 1993 and that he would "die in prison."

As for the affidavit of the juror claiming that the jury "was afraid that Mr. Thompson might be released from prison if he was to receive anything less than a death sentence" and "did not necessarily want to sentence Mr. Thompson to death," RCr 10.04 provides that a "juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot." Thus, the self-serving affidavit produced over seven years after the trial cannot be used to establish Thompson's claim of ineffective assistance of counsel. *See Gall v. Commonwealth*, 702 S.W.2d 37, 44 (Ky. 1985) (rejecting juror's testimony as basis for defendant's claim that jurors improperly considered parole).

Appellant is not guaranteed errorless counsel or counsel that can be judged ineffective only by hindsight, but rather counsel rendering reasonably effective assistance at the time of trial. *Strickland*, 466 U.S. at 689; *see also Haight v. Commonwealth*, 41 S.W.3d at 442. From our review of the totality of the circumstances in this case, we cannot say that defense counsel's single remark regarding the possibility of Thompson being paroled constituted ineffective assistance of counsel in this case.

Even if defense counsel's performance was deemed deficient for mentioning the possibility of Thompson being released on parole, given that Thompson killed Cash and escaped while he was incarcerated, it is unlikely that additional evidence of Thompson's serve-out would have held much sway in trying to convince the jury that Thompson being in prison for the rest of his life would be adequate to protect the public from Thompson. The Commonwealth would most assuredly have argued that being incarcerated did not stop Thompson from killing an innocent man in 1986.

Further, the Commonwealth presented strong evidence of aggravating factors in this case, and the jury specifically found the following aggravating factors: the prior conviction of murder, the murder was committed while Thompson was incarcerated, and the victim was a corrections officer engaged in the performance of his duties at the time of his murder. Thus, we believe that the jury would still have recommended the death penalty in this case absent his counsel's mention of the possibility of parole.

*Thompson v. Commonwealth*, 2010 Ky. Unpub. LEXIS 99, at *4-11.

It is undisputed that the standard governing an ineffective-assistance-of-counsel claim is stated in *Strickland v. Washington*. To prevail on an ineffective-assistance claim, a convicted defendant must prove that counsel's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Foust v. Houk*, 655 F.3d 524, 533 (6th Cir. 2011). To demonstrate deficient performance, the defendant must prove that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "under the circumstances,

the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

To demonstrate prejudice, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show a "'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 797 (2011)). The defendant must show that the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, __, 130 S. Ct. 1473, 1485 (2010).

Thompson does not dispute that his ineffective-assistance claim was adjudicated on the merits by the Kentucky Supreme Court and, therefore, that § 2254(d) governs the standard of review. The standard under § 2254(d), on which the petitioner bears the burden of proof, is "'difficult to meet' [and a] 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 131 S. Ct. at 1398 (quoting *Harrington v. Richter*, 131 S. Ct. at 786; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Under § 2254(d), Thompson can only succeed on this claim by showing that the Kentucky Supreme Court unreasonably applied *Strickland* to his claim. When applying *Strickland* under § 2254(d), this Court's review of the performance prong is "'doubly deferential.'" *Cullen v. Pinholster*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Court must "take a 'highly deferential' look at counsel's performance," *id.* (citing *Strickland*, 466 U.S. at 689), "through the 'deferential lens of § 2254(d).'" *Id.* (citing

8

*Knowles v. Mirzayance*, 556 U.S. at 123 n.2). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. at 788.

With regard to *Strickland*'s performance prong, Thompson contends that this Court erred when it rejected his argument that trial counsel's stated reason for not emphasizing the serve-out – that at the time of trial the serve-out could be revisited by the Parole Board – was actually a *post hoc* rationalization rather than an actual reasonable trial strategy. Thompson maintains that the evidence, *i.e.*, trial counsel's performance, contradicts his statement regarding his claimed strategy. This Court found that trial counsel's presentation of Thompson's case on the whole did not contradict trial counsel's stated trial strategy. *See Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003) (holding that "courts may not indulge 'post hoc rationalization' for counsel's decisionmaking that **contradicts** the available evidence of counsel's actions") (emphasis added). The Court finds that this conclusion is not clearly erroneous.

Thompson also argues that this Court clearly erred in relying on *Cullen v. Pinholster*, 131 S. Ct. at 1407, in stating that the state court must "affirmatively entertain the range of possible reasons that [trial] counsel may have had for proceeding as they did" because trial counsel's own explanation for his statement concerning parole reveals that it was not a tactical decision made for the reasons stated by the Kentucky Supreme Court. However, the Court finds that the Kentucky Supreme Court's analysis was not unreasonable. A reviewing court is not limited to trial counsel's subjective state of mind. In *Harrington v. Richter*, 131 S. Ct. at 790, the Supreme Court offered "strategic considerations" that may have justified counsel's failure to engage certain expert opinion.

> The Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking. Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, *Wiggins*, 539 U.S. at 526-527, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam). After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind. *Strickland*, 466 U.S. at 688.

*Harrington v. Richter*, 131 S. Ct. at 790. Indeed, a reviewing court is required "not simply to give [the] attorneys the benefit of the doubt [citing *Pinholster v. Ayers*, 590 F.3d 651, 673 (9th Cir. 2009)] but to affirmatively entertain the range of possible reasons [trial] counsel may have had for proceeding as they did." *Pinholster*, 131 S. Ct. at 1407 (citing *Pinholster v. Ayers*, 590 F.3d at 692 (Kozinski, C.J., dissenting)) (internal quotation marks omitted); *cf. Spencer v. Scutt*, No. 09-13362, 2013 U.S. Dist. LEXIS 15782, at *22 (E.D. Mich. Feb. 6, 2013) (rejecting state court's suggested strategy where it and counsel's stated strategy were "mutually exclusive"). Under § 2254(d), "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. at 788. The Court finds that Thompson failed to overcome his burden in establishing deficient performance under this standard, and the Court did not commit clear error.

With regard to *Strickland*'s prejudice prong, Thompson disagrees with this Court's assessment that trial counsel's reference to the possibility of parole did not differ substantially from evidence and argument presented because trial counsel repeatedly stated that Thompson

would die in prison and put into evidence through Thompson's testimony that he was given a serve-out by the Parole Board. For the reasons stated in the Memorandum Opinion, the Court finds no clear error.

Thompson also argues that the Court committed clear error when it cited case law from the Sixth Circuit which distinguishes cases where counsel has failed to conduct an investigation or present evidence of mitigation from those where the petitioner is merely dissatisfied with counsel's presentation of mitigation. Thompson cites to *Sears v. Upton*, __ U.S. __, 130 S. Ct. 3259 (2010), where the Supreme Court rejected a similar distinction made by the Supreme Court of Georgia. This point is well-taken. However, as Respondent points out, this is not a case where Thompson challenges the adequacy of the mitigation investigation. Instead, he challenges as erroneous one statement by trial counsel. The Court did not conclude that trial counsel's effort to present some mitigation evidence "foreclose[d] [the] inquiry" into whether counsel's statement caused prejudice. *Id.* at 3266. Therefore, the Court finds this argument unpersuasive.

Finally, Thompson contends that the Court was in error in finding the Kentucky Supreme Court's prejudice analysis was not unreasonable because that court failed to reweigh the aggravating evidence against the mitigating evidence in its opinion affirming the denial of his RCr 11.42 motion. However, "[i]n reviewing whether the state court's decision involved an unreasonable application of clearly established federal law, we examine the ultimate legal conclusion reached by the court," *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Harrington v. Richter*, 131 S. Ct. at 784), "not merely the statement of reasons explaining the state court's decision." *Id.* (citing, *inter alia*, *Gill v. Mecusker*, 633 F.3d 1272, 1291-92 (8th Cir. 2011)). Absent a "conspicuous misapplication of Supreme Court precedent" that renders the

11

decision "contrary to" clearly established law, *id.* (citing *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1256 n.3 (11th Cir. 2002)), the proper question is whether there is "any reasonable argument" that the state court's judgment is consistent with *Strickland. Id.* at 831-32 (citing *Harrington v. Richter*, 131 S. Ct. at 788; *Premo v. Moore*, 131 S. Ct. 733, 740 (2011)). "If the state court 'reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions,' then federal review under [2254(d)] is at an end." *Id.* at 832 (citing *Premo v. Moore*, 131 S. Ct. at 744).

Here, while the Kentucky Supreme Court did not explicitly reweigh the mitigating factors presented at trial, in its analysis of Thompson's ineffective-assistance claim it stated, "Defense counsel argued strongly and passionately to the jury to consider the mitigating factors and not to impose the death penalty in his closing argument in this case." It further stated, "From our view of the totality of the circumstances in this case, we cannot say that defense counsel's single remark regarding the possibility of Thompson being paroled constituted ineffective assistance counsel in this case." Therefore, it is clear that the court did not disregard the mitigating evidence presented. The Court notes that the deference required by § 2254(d) applies when a state court gives no reason at all for its decision. *Harrington v. Richter*, 131 S. Ct. at 785 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons for its decision before its decision can be deemed to have been 'adjudicated on the merits.'"). This Court undertook the reweighing of the aggravating and mitigating factors presented in its Memorandum Opinion denying the habeas petition and found that Thompson failed to demonstrate that the Kentucky Supreme Court's decision was "contrary to" or "an unreasonable application" of federal law. 28 U.S.C. § 2254(d)(1).

Based on the above, and considering the highly deferential standard of review required

by *Strickland* and § 2254(d), this Court finds that it was not clear error to deny habeas relief on

Thompson's claim of ineffective assistance of counsel.  Accordingly, the Court will deny the

motion to alter or amend the judgment as to the ineffective-assistance claim.

To the extent Thompson moves in the alternative for an evidentiary hearing or to depose

trial counsel, the Court denied his motion for an evidentiary hearing on this issue for the reasons

stated in its Memorandum Opinion and Order entered on May 2, 2012 (DN 30).  Thompson

demonstrates no reason to alter or vacate that decision.  The Court also sees no reason to expand

the COA on this issue.

**B.      Claim Six - Flawed Proportionality Review**

Thompson next moves the Court to amend its order to expand the COA to include Claim

Six.  Thompson asserts that Kentucky's proportionality review in his case "was

unconstitutionally limited in scope, which rendered the review process meaningless in violation

of the Eight[h] Amendment and the Due Process Clause of the Fourteenth Amendment."

Thompson states that the Sixth Circuit granted a COA on the same legal issue and attaches an

order entered June 19, 2012, by a panel of the Sixth Circuit granting Petitioner-Appellant Roger

L. Wheeler's motion to expand the COA to include his claim challenging Kentucky's

proportionality review.  Thompson argues, "The granting of a certificate of appealability by a

panel of the Court of Appeals suggests that reasonable jurists could debate the resolution of the

claims and thus a COA should be granted on this claim."  The Sixth Circuit having granted a

COA on the same issue in another case, the Court will grant the motion to expand the COA to

include his sixth claim of error challenging Kentucky's proportionality review in his case.

**C.      Claim Seven - Cumulative Error**

Thompson also moves to expand the COA to include his seventh claim of error based on cumulative error. While apparently conceding that cumulative error claims are not cognizable in the Sixth Circuit, Thompson argues that the Court should grant a COA on this claim because there is a split in the circuits. However, the Court sees no reason to alter or vacate its prior decision denying a COA on the cumulative-error issue.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that Thompson's motion to alter and amend (DN 44) is **DENIED**, except to the extent that he seeks to expand the COA to include one additional claim of error. The motion to expand the COA to include his sixth claim of error challenging Kentucky's proportionality review in his case is **GRANTED**.

Date:


cc:      Counsel of record
4413.010